# RYAN v. CURLEW IRRIGATION & RESERVOIR COMPANY.

No. 1995.    Decided September 16, 1909 (104 Pac. 218).

1. CONTRACTS—BUILDING CONTRACTS—STIPULATIONS—CONSTRUCTION. A stipulation in a building contract, specifying the manner of the construction and the amount and quality of the materials, that a third person should be referee in all cases arising under the contract, and that if the superintendent of the contractee should question the work, the contractor should stop the work until the question had been settled by the referee, whose decision should be binding, was a cautionary stipulation inserted for the benefit of the contractee, and it was not a stipulation whereby the whole matter as to whether the work and materials were of the kind and quality named in the contract, and whether the construction was to the satisfaction of a person agreed on by the parties. (Page 387.)

2. CONTRACTS — CONSTRUCTION. The court in construing a contract must construe and apply together all the provisions thereof, and each provision must, if possible, be given effect. (Page 388.)

3. CONTRACTS—BUILDING CONTRACT—STIPULATIONS—WAIVER. Where neither party to a building contract paid any attention to the clause providing for a referee, to whom should be referred any disputes, and both parties treated the matter as if no such clause existed, though the parties had disputes, both parties waived the clause by mutual consent, and it could not be enforced against one in favor of the other. (Page 389.)

4. CONTRACTS—BUILDING CONTRACTS—ACCEPTANCE OF WORK. A building contract, specifying the manner of doing the work, and providing that on its completion a person named may accept it, does not authorize such person to bind the con-tractee by an acceptance of work not done in accordance with the contract, or to place an erroneous construction on the contract, and bind the parties, or either of them, thereby. . (Page 390.)

5. CONTRACTS — BUILDING CONTRACTS — PERFORMANCE — EVIDENCE.. That the person representing the contractee in a building contract made no objections while the work was in progress, and did not submit any matter to the referee named, to whom questions should be referred, as to whether the work or material was in accordance with the contract was only evidence more or less strong that the work and material were in accordance with the contract. (Page 390.)

6. CONTRACTS — BUILDING CONTRACTS — PERFORMANCE — EVIDENCE. Where a building contract provided that the work should be done in accordance with the specifications under the supervision of the superintendent, but did not provide that he should be the sole judge of whether the contract had been complied with, or that his acceptance should be conclusive on that point, the acceptance of the work by the superintendent was only evidence tending to show that the work and material were in accordance with the contract. (Page 390.)

7. CONTRACTS—BUILDING CONTRACTS—RECOVERY. A contractor suing on the contract cannot recover unless he shows that he has substantially complied with it. (Page 391.)

8. CONTRACTS—BUILDING CONTRACTS—WAIVER OF BREACH. That the contractee in a building contract specifying the manner of doing the work made no objections as the work proceeded did not preclude him from asserting, when sued for the contract price,. that the work had not been done in accordance with the contract. (Page 392.)

9. TRIAL—INSTRUCTIONS—EXCEPTIONS—SUFFICIENCY. Exceptions to an instruction as a whole cannot be considered, where the whole instruction is not bad. (Page 393.)

10. TRIAL — INSTRUCTIONS — EXCEPTIONS — SUFFICIENCY. Exceptions aimed at excerpts of instructions are unavailing where the instructions, when considered as a whole, are correct. (Page 393.)

APPEAL from District Court, First District; *Hon. W. W. Maughan*, Judge.

Action by Edward Ryan against the Curlew Irrigation and Reservoir Company.

Judgment for defendant. Plaintiff appealed.

AFFIRMED.

*S. T. Corn* and *A. Howat* for appellant.

*Fred J. Holton* and *J. D. Call* for respondent.

## RESPONDENT'S POINTS.

The owner of the real property who has employed another to erect a structure on his land does not, by taking possession and applying the structure to the uses for which it was built preclude himself from insisting that the builder has not properly fulfilled his contract. The results cannot be separated from the necessary consequences of ownership and as he cannot without prejudice to himself reject them or refuse to retain them the law does not imply any promise of his acceptance of them. This being so it matters not whether at the time he is or is not aware of the defects. (*Mohry v. Reed*, 40 Mo. App. 99; *Steret v. Fulton*, 31 Mo. 59.) Each material as it is placed in the work becomes annexed to the soil and therefore the property of the owner. As the erection is his by annexation to the soil he may suffer it to stand and there is no rule of law against his using it without prejudicing his rights. (*Smith v. Bray*, 17 N. Y. 173, 72 Am. Dec. 442; 16 Cyc. 29; *Cannon v. Hunt*, 113 Ga. 501; *Mallard v. Moody*, 31 S. E. 45; *Wartz v. Metcalf*, 23 Ky. L. R. 2189, 66 S. W. 824; *Lewis*

v. *Slack,* 27 Mo. App. 119; *Glacius v. Black,* 50 N. Y. 145, 10 Am. Rep. 449; *Leverone v. Arancio,* 179 Mass. 439; *Fitzgerald v. Moran,* 141 N. Y. 419; 36 N. E. 508.) The superintendent and company had a right to test the dam and ascertain whether or not it was fit for the purpose for which it was intended. The reservoir and dam site belonged to the company. The fee was in it. It had paid $388 more than it should, not counting the 25 per cent it had a right to withhold. Ryan had abandoned the work and refused to return.

FRICK, J.

On the 20th day of June, 1905, appellant and respondent entered into a contract by the terms of which appellant agreed to construct and complete a certain dam in Box Elder county, Utah, for the respondent. The contract, among other provisions, contained the following:

"The party of the second part [appellant] hereby undertakes and agrees to furnish the necessary labor and materials, including tools, implements and appliances, required, and to build and complete in a workmanlike manner an earthen dam and concrete tunnel across the creek mentioned above for the party of the first part [respondent], in the manner and under the condition and according to the specifications hereinafter set forth, and the plans for said work prepared by the engineer of the party of the first part."

The contract specially provided when the work was to be commenced and when completed; the dimensions of the dam and the manner of its construction, together with the kind and quality of the materials to be used. In short the contract in terms provided what the contractor should do, and how the work should be done in constructing the dam. The contract also provided that payments to the contractor "are to be made on the 20th day of each month upon the report of the superintendent for the party of the first part." In this way seventy-five per cent. of the work done and material furnished by the contractor was to be paid monthly,

36 Utah—25

and the remaining twenty-five per cent. of the contract price
was to be paid sixty days after the "final completion of the
entire work." "All work to be inspected by the superin-
tendent of the party of the first part, and no payments to be
made except with his approval." The contract also contained
a special clause upon which appellant lays much stress, and
for that reason we shall set it forth in full. It is as follows:

"To prevent disputes and litigation it is further agreed by and
between the parties of this contract that E. J. Showell shall be referee
in all cases that may arise under this contract. In case the super-
intendent for the party of the first part shall question the work being
done, either in workmanship or material, the contractor shall stop
said work until the question has been settled by said referee and
the decision of said referee shall be binding on the contractor."

Appellant, in substance, alleged in his complaint that he
had completed the dam in accordance with the terms of the
contract, and that the same had been inspected by respond-
ent's superintendent, and accepted; that appellant had done
certain extra work, and had furnished certain material not
included in the original contract, and for which respondent
was liable under the terms of the contract, amounting in
round numbers to $704, and that there was due the appellant
the sum of $1095.83 as the twenty-five per cent. remaining
unpaid on the contract, the whole amount aggregating the
sum of $1799.83, for which appellant demanded judgment.
Respondent in its answer admitted the making of the con-
tract, but denied that appellant had constructed the dam in
accordance with its terms, or in accordance with the plans
and specifications; denied that the dam had been completed
and accepted, and also set forth several affirmative defenses
and counterclaims which need not be specially mentioned.
The case was tried to a jury, and the court withdrew from
their consideration appellant's claim for extra labor and ma-
terial upon the ground that all the material claimed by ap-
pellant was in fact required to be furnished by him under
the terms of the contract and as a part of it. The court also
withdrew from the consideration of the jury respondent's
special counterclaims for damages, and submitted the case

to the jury upon the other issues presented by the pleadings. The jury found the issues in favor of respondent, and returned a verdict against the appellant of "no cause of action." The court entered judgment upon the verdict, the effect of which was a dismissal of the complaint, and for costs, against appellant.

Appellant contends that the court erred in its rulings by excluding his claim for extra labor and material. We are of the opinion that the labor and material claimed by appellant as extra were not such, but that both the labor and material claimed as extra clearly came within the terms of the contract as labor and material to be provided by appellant as part of the contract and upon the terms and conditions therein specified. Appellant's contention in this regard, therefore, cannot be sustained.

Appellant further asserts that the court erred in refusing appellant's request to instruct the jury to return a verdict in favor of appellant, for the sum of $1095.83, the amount representing the twenty-five per cent claimed to be due him under the contract. This claim is based upon the provision of the contract as construed by appellant, and especially that clause of the contract which provided for a referee in case of disputes. As we construe this clause, it was what is usually termed by the courts a "precautionary stipulation," inserted in the contract for the benefit of the contractee. It is not a stipulation whereby the whole matter as to whether the labor and material were of the kind and quality named in the contract, and whether the work required to be done was to the satisfaction of a certain person agreed upon by the parties. Under such stipulations the courts have frequently held that if the material is accepted by, and the work is done to the satisfaction of, the person named, then the contractee, in the absence of fraud, is estopped from subsequently disputing the fact that the work was completed and accepted in accordance with the stipulations of the contract. *Moore v. Kerr,* 65 Cal. 519, 4 Pac. 542, cited by appellant, is a case in which the rule just referred to is illustrated and applied. In that

case the contract contained a stipulation that the bridge agreed to be constructed was "to be built under the direction and to the satisfaction of the superintendent appointed by said board [the contractee] in good and workmanlike manner." The trial court found that the bridge had been built and completed to the satisfaction of the superintendent, and that he had accepted the same. The Supreme Court of California accordingly held that, in the absence of any allegation or proof of collusion and fraud between the superintendent and the contractor, the contractor, upon the findings made by the court, was, as a matter of law, entitled to judgment for the unpaid balance of the contract price. In the case of *Wright v. Meyer,* 25 S. W. 1125, the Court of Civil Appeals of Texas states the rule in the following language:

"The rule is that when the architect is, by the terms on the contract, made the sole arbiter between the parties of matters concerning material and character of work used in construction, the exercise of his judgment on such matters will be binding on the parties, unless some species of fraudulent conduct in respect thereto is pleaded and proved."

The referee clause of the contract in question is, however, not like the one passed on by the Supreme Court of California nor like the one referred to by the Texas Court of Civil Appeals. This is clearly pointed out by the last-named court in the Wright Case. It is there in effect held that the rule does not apply if the contract in terms provides the kind and quality of the material, and how the work shall be done. In such event all the provisions of the contract must be construed and applied together, and each provision must, if possible, be given effect. It is true that in the referee clause contained in the contract in question a certain person is named as referee, to whom shall be referred any question as to whether the work or material is in accordance with the contract, and that when the matter is so referred, the decision of the referee shall be binding on the contractor. If in this case any matter mentioned in the contract had been referred to the referee, and he had

exercised his judgment upon it and rendered a decision, we would then be required to determine the effect of such a decision. In this case, however, the parties all agree that nothing was ever submitted to the referee, although the parties, as appears from the evidence, did not always agree. For instance, the evidence discloses that the contractor was not satisfied with the estimates made by the person whom the contractor insists was respondent's superintendent, but he, nevertheless, did not appeal to the referee, but submitted the matter to the engineer who prepared the contract. On the other hand, the officers of the respondent contended that the dam was not completed according to the contract, and refused to pay therefor, but neither they nor appellant at any time asked that anything be referred to the referee. Again, the appellant, who now strenuously insists that, inasmuch as respondent has failed to call in the referee to adjust any difficulties, we must assume that there were none to adjust, himself waived this provision, and at no time appealed to the referee or asked him to pass upon any question, although it is made clear that respondent disputed appellant's claims that he had completed the dam, and that he was entitled to his pay. If anything fell within the referee clause, we think it was the question of whether the dam was completed in accordance with the terms of the contract. It is thus apparent that neither party paid any attention to the referee clause, but treated the matter as if no such clause existed. It seems to us that under the undisputed evidence no other legal inference is permissible than that both parties waived the so-called referee clause as if by mutual consent. If, therefore, the clause was ignored at a time when it might have been of some use to the parties, it would be an injustice, if not a fraud, to now enforce it as against one and in favor of the other. Courts should not enforce what the parties themselves have by mutual consent waived.

But, assuming that we are wrong in this conclusion, and that the referee clause is to receive the full effect that is usually given to such clauses by the courts in building

and construction contracts, what then should the result be? As before stated, such clauses are construed to be for the benefit of the contractee, and if the contract specifies the manner of doing the work, and also provides that upon its completion a certain person named may accept the work, such person may, nevertheless, not bind the contractee by an acceptance of work which is not done and completed in accordance with the terms of the contract. Neither can such a person place an erroneous, or what is sometimes termed an "illegal," construction upon the contract, and binds the parties, or either of them, by such construction. Nor is the fact that the person who it is contended represented the respondent in this case while the work of constructing the dam was in progress, made no objections, nor submitted any matters to the referee conclusive as against the respondent. No doubt the fact that no objections were made while the work was being done was important, but it was at most only evidence more or less strong that the work and material were in accordance with the provisions of the contract. This would also be so if the work had been accepted by the superintendent of respondent as claimed by appellant, since the contract nowhere provides that the superintendent should be the sole juge of whether the terms of the contract had been complied with, or that his acceptance of the dam should be conclusive upon that point, but the contract in different clauses provides that the work shall be done in accordance with the specifications stated in the contract, and under the supervision of the superintendent of respondent.

The case of *United States v. Walsh,* 115 Fed. 697, 52 C. C. A. 419, seems to be much in point. In that case a similar clause contained in a construction contract was construed and applied by the United States Circuit Court of Appeals. It is there held that such a clause is to be construed in connection with all the provisions of the contract, and is ordinarily to be regarded as merely precautionary, and for the benefit of the contractee. In that case, like in

this, it was contended that the work had been accepted, and further, that no objection either to the work or the material had been made while the work was in progress; and hence it was contended that the plaintiff in that case, for whom the work was done, could not be heard to say that the work was not done according to the contract. Upon this point the court said: "The acceptance by the engineer, or his acquiescence as the work proceeded, and the final acceptance by the board of officers designated by the navy department, were important evidential facts tending to establish that the work and materials were supplied conformably to the contract. In other respects they were not of controlling effect." The court also emphasized the doctrine that where the contract specifies how the work shall be done, the person authorized to accept the work cannot bind the contractee by accepting the work which is not done in accordance with the specifications. This is but common sense. The parties made the contract as a guide for each other's conduct, and when the terms of the contract has substantially been complied with, and not until then has the contract been performed, and certainly no one, unless expressly authorized by the parties, can vary the terms of the contract. The doctrine is illustrated and applied in the following, among other, cases: *Town of Sterling v. Hurd* (Colo.), 98 Pac. 174; *Cannon v. Hunt,* 113 Ga. 501, 38 S. E. 983; *Glacius v. Black,* 50 N. Y. 145, 10 Am. Rep. 449; *Fitzgerald v. Moran,* 141 N. Y. 419, 36 N. E. 508.

In an action upon the contract appellant cannot recover unless and until he shows that he has, substantially at least, complied with its provisions. Appellant alleged that he had so complied and respondent denied these allegations, and much evidence was directed to the issue thus presented. The claim that appellant makes, however, is that respondent was precluded from asserting that the work had not been done according to the terms of the contract, for the reasons (1) that respondent made no objections as the work proceeded; and (2) that the dam was accepted by the respondent's superintendent after it was

completed. In answer to the first proposition we have already pointed out why it is not tenable; and, as to the second, this was particularly a question of fact for the jury, which they found against appellant's contention. While the contract speaks of a superintendent, no one was designated as such in the contract itself. Some time afterwards, however, a Mr. Hurd was appointed by resolutions adopted by the board of directors of respondent. The resolutions do not, of themselves, make it clear whether he was appointed as superintendent generally, or whether he was appointed for the purpose of overseeing a particular part of the work only. We are of the opinion that a fair construction of the resolutions, when considered in connection with the subsequent conduct of the parties, makes it fairly clear that it was not contemplated by the parties that Mr. Hurd was in fact appointed as the general superintendent. Appellant did not so regard him, for the reason that whenever there was any difference between Mr. Hurd and appellant, appellant always submitted the matter to Mr. Anderson, whom appellant recognized as representing the respondent, and who had prepared the plans and specifications for the construction of the dam. It will thus be seen that both appellant and respondent assumed, and acted upon the assumption, that Mr. Anderson, and not Mr. Hurd, was the person who was to pass final judgment upon whether the dam was completed according to the terms of the contract or not. The jury having in effect so found, it is not of much importance whether this was declared to be so as a matter of law by the court or by the jury as a question of fact. And further, since under the law respondent was not estopped from proving that the dam was not constructed and completed in accordance with the terms of the contract, and since the question of whether the dam was accepted or not was one of fact, which was determined against appellant's contention, we cannot see wherein he was prejudiced by any ruling made by the trial court. Under the contract appellant was to be paid specific amounts for material when reduced to square or cubic feet or other-

wise, and for work done when reduced to cubic feet or yards, or when expressed in some other form. In this way it was an easy matter to determine just what appellant was entitled to for material furnished and for work done on the dam. The jury allowed him the contract price for all material furnished, and for all work done by him. In view that the jury have found that the dam was not completed in accordance with the terms of the contract, and the finding being supported by the evidence, we think the appellant was allowed all that he was entitled to. The appellant, however, complains that the court, in submitting the case to the jury, erred in giving certain instructions and in refusing to instruct as requested by appellant. The difficulty with the claim that the court erred in giving certain instructions is that the exceptions are either to instructions as a whole, or, where this is not the case, the exceptions are aimed at excerpts only. Where the exceptions are to the whole instruction, the exceptions cannot be considered, because the whole instruction is not bad; and where the exceptions are to excerpts merely, the exceptions are unavailing, for the reason that if the instructions are considered as a whole, as they must be, the court committed no error in using the particular language or expressions complained of. The other errors complained of are not of sufficient importance to merit special consideration.

While the record is not free from technical errors, yet we are well satisfied that in view of all the evidence appellant suffered no invasion of a substantial right, and hence we are not authorized to reverse the judgment. The judgment therefore is affirmed, with costs to respondent.

STRAUP, C. J., and McCARTY, J., concur.