BAILEY–ALLEN COMPANY, INC.,
Plaintiff and Appellee,

v.

Stanley M. KURZET, an individual; Stanley M. Kurzet and Anne L. Kurzet, as trustees for the Kurzet Family Trust; The Kurzet Family Trust; and John Does 1 through 10, Defendants and Appellants.

No. 930178–CA.

Court of Appeals of Utah.

May 31, 1994.

Spencer E. Austin (argued), William J. Evans, Parsons, Behle & Latimer, Salt Lake City, for appellants.

Bruce J. Nelson (argued), Allen Nelson Rasmussen & Christensen, Salt Lake City, for appellee.

Before BILLINGS, P.J., and DAVIS and ORME, JJ.

## OPINION

BILLINGS, Presiding Judge:

Stanley Kurzet, Anne Kurzet, and the Kurzet Family Trust appeal from a district court order awarding Bailey–Allen Company, Inc., damages, prejudgment interest, and post-judgment interest under a construction contract and denying the Kurzets' request for attorney fees on their successful summary judgment motion. We reverse and remand.

## FACTS

In July 1990, Stanley Kurzet and Bailey–Allen Company, Inc. entered into a contract for the construction of the Kurzets' home. The agreement, which Mr. Kurzet drafted, provides in relevant portion:

This Agreement covers all of the understandings existing between BAILEY–ALLEN (Contractor) and STANLEY KURZET (Owner) for the construction of a residence on LOT #4 of the EVERGREEN development at DEER VALLEY, PARK CITY, UTAH.

The Contractor is retained by Owner on a cost plus fixed fee basis. Costs shall be billed monthly and payment shall be made within ten days of receipt of billing. The fee fixed for this contract is set at $100,000 for the residence as depicted in the drawings plus a maximum of $50,000 in directed additional work, if any. Any directed additional work in excess of an aggregate cost of $50,000 will result in additional fees based on 7% of the cost of such additional work.

. . . .

Both Contractor and Owner stipulate that this contract cannot be changed except and unless in writing, bearing the date and signatures of both parties.

. . . .

The Owner's review authority notwithstanding, the Contractor is fully responsible to Owner for the performance of subcontractors. Accordingly, costs occasioned by the failure of a subcontractor to perform shall not be assessable to Owner.

The Contractor shall carry insurance specifically providing for saving Owner harmless from any action arising due to the injury of a worker even if an employ[ee] of a subcontractor or supplier who is not properly or adequately insured. Contractor shall, within 10 days of the date of this agreement furnish a Certificate of Insurance prepared by the Carrier or its Authorized Agent. The Certificate shall specifically state the purpose and limits of the policy and these shall show that the work to be performed under this contract is covered.

. . . .

Contractor takes note that Owner is concerned about the quality of workmanship and materials and that this concern stems from prior experience with a local contractor and ownership of several condominiums at the Pinnacle development. Owner will not make unreasonable demands, however, slovenly workmanship and/or substandard materials will neither be accepted [n]or paid for by Owner. Owner considers that the fees he pays to Contractor are specifically for his expertise in selecting and supervising workers so as to avoid unacceptable and substandard workmanship and/or the use of substandard quality materials.

The agreement is silent regarding remedies in the event of a breach by either party.

Ten days after the contract was signed, Mr. Kurzet requested the required certificate of insurance, but never received it. Bailey–Allen later admitted that its policy had expired nearly two years earlier. In October 1990, Mr. Kurzet terminated Bailey–Allen's services, based on its failure to provide proof of insurance and Mr. Kurzet's dissatisfaction with Bailey–Allen's attention to the project. At the time of the termination, the work under the contract was approximately 10% complete, with the house framed and the roof partially finished.

Bailey–Allen filed a complaint against the Kurzets in December 1990, alleging breach of contract, mechanics' lien, unjust enrichment, and failure to obtain a construction bond. The trial court subsequently granted the Kurzets' motion for partial summary judgment on the latter three causes of action, reserving the breach of contract claim for trial to the bench. At the trial on the breach of contract claim, the court reinstated sua sponte the unjust enrichment claim and granted a continuance for the parties to present their evidence thereupon.

After hearing the evidence, the court determined "that the subject contract was ambiguous and incomplete as drafted and that the Court has a responsibility to add to it." The court further concluded that Bailey–Allen's failure to provide evidence of insurance and its lack of supervision of the project were

material breaches of the contract that justified the termination. The court determined the Kurzets had not breached the contract.

The trial court then concluded that Bailey–Allen was entitled to recover under its unjust enrichment theory and went on to consider the amount of damages due, concluding that "the most logical basis [was] the percentage of defendants' residence that was completed during the period plaintiff was on the job." Accordingly, the court awarded Bailey–Allen $15,500 "in quantum meruit/unjust enrichment, based on the contract between plaintiff and defendants, $10,000 representing 9⁄10 of the contract price for services in completing 9⁄10 of the construction, and $5,500 for services involving negotiations for the purchase of lumber." Bailey–Allen was held liable to the Kurzets for $1800 in costs for repairing Bailey–Allen's faulty construction of a retaining wall, for $2000 for repairing its faulty construction of concrete steps, and for $559 in costs for unnecessary materials.

The court entered judgment for Bailey–Allen in the amount of $11,141, representing its damages offset by the amounts owed to the Kurzets. The court awarded Bailey–Allen prejudgment interest and postjudgment interest from and after April 17, 1992, the date the trial court granted Bailey–Allen's motion to compel findings of fact and conclusions of law. The court dismissed the Kurzets' counterclaims and denied their claim for attorney fees and costs associated with their successful motion for partial summary judgment on the mechanics' lien and construction bond claims.

The Kurzets appeal, claiming the trial court erred in: (1) awarding Bailey–Allen damages under the contract or in quantum meruit; (2) awarding prejudgment interest; (3) awarding postjudgment interest from the date it granted Bailey–Allen's motion to compel findings of facts and conclusions of law, rather than from the date the judgment was entered; and (4) denying their claim for attorney fees and costs on their successful partial summary judgment motion under the

mechanics' lien and construction bond statutes.

## I. DAMAGE AWARD

The trial court awarded Bailey–Allen $15,500 in damages "in quantum meruit/unjust enrichment, based on the contract between the parties."[1] Whether the court's theory of recovery was proper raises a question of law, which this court reviews for correctness. *Van Dyke v. Chappell*, 818 P.2d 1023, 1024 (Utah 1991). We are also mindful that we may affirm a trial court's decision on any proper ground. *Mel Trimble Real Estate v. Monte Vista Ranch, Inc.*, 758 P.2d 451, 456 (Utah App.), *cert. denied*, 769 P.2d 819 (Utah 1988); *accord Buehner Block Co. v. UWC Assoc.*, 752 P.2d 892, 895 (Utah 1988). Therefore, we can affirm the award if we find any proper basis to support it.

### A. Recovery Under the Contract

We first look at the written contract to determine whether its terms justify the damage award. In evaluating the contract, this court must first ascertain whether the contract was integrated and second whether it was ambiguous. *Ron Case Roofing & Asphalt Paving, Inc. v. Blomquist*, 773 P.2d 1382, 1385 (Utah 1989). Neither party argued that the contract was not integrated, and it expressly states that it was the entire understanding of the parties and could not be changed except in writing. Regarding ambiguity, however, the contract provided no guidance relevant to the proper remedy for breach. As such, the contract was ambiguous or, more accurately, silent as to the intent of the parties regarding remedies in case of breach. Furthermore, no extrinsic evidence shed light on what remedies the parties intended in the event of a breach.

In the absence of any express contract provision or extrinsic evidence of intent, we look to a rule set forth in an early supreme court case for guidance in our analysis: "In an action upon the contract [the contractor] cannot recover unless and until

---

1. Bailey–Allen argues that the award of $10,000 was "clearly awarded pursuant to the construction contract [and not] under an 'unjust enrich-

ment' theory." However, the basis of the award is not as clear as Bailey–Allen suggests, particularly in light of the wording of the judgment.

he [or she] shows that he [or she] has, *substantially at least, complied* with its provisions." *Ryan v. Curlew Irrigation & Reservoir Co.*, 36 Utah 382, 391, 104 P. 218, 221 (1909) (emphasis added); *see also Reliance Ins. v. Utah Dept. of Transp.*, 858 P.2d 1363, 1370 (Utah 1993) (discussing doctrine of substantial completion, but holding it inapplicable on facts of case). Professor Corbin states this rule as follows: "[W]hen a contract has been made for an agreed exchange of two performances, one of which is to be rendered first, the rendition of this one substantially in full is a constructive condition precedent to the duty of the other party to render his [or her] part of the exchange." 3A Arthur L. Corbin, Corbin on Contracts § 700, at 309 (1960).

■ However, "[i]f the defective performance, though less than 'substantial' has conferred benefits on the defendant in excess of his [or her] injury, he [or she] may be under a quasi-contractual duty to pay that excess." *Id.* § 700, at 310. Thus,

> [a] contractor whose breach is such that he [or she] has rendered less than "substantial performance" has no right to the contract price; he [or she] is said to have no remedy "on the contract".... The contractor's right is a right to reasonable compensation for value received by the defendant over and above the injury suffered by the contractor's breach.

*Id.* § 710, at 342.

■ Applying this principle, we conclude neither the *court's* findings nor the underlying evidence establish that Bailey–Allen substantially performed under the contract. The court found only that what work was accomplished had come about *regardless of whether Bailey–Allen performed.* Furthermore, the court acknowledged that Bailey–Allen was "not performing" certain aspects of the contract, in addition to failing to obtain insurance. Even if we attribute to Bailey–Allen the 10% of the work completed during its three-month tenure, it still does not constitute substantial performance. Because Bailey–Allen failed to substantially perform as required by the contract, it cannot recover under the contract.

### B. Recovery in Quantum Meruit

■ The Kurzets argue that the existence of a written contract bars an action in quantum meruit. They are correct that recovery in quantum meruit typically presupposes that no *enforceable* written or oral contract exists. *Karapanos v. Boardwalk Fries, Inc.*, 837 P.2d 576, 578 (Utah App.), *cert. denied*, 843 P.2d 1042 (Utah 1992); *accord Davies v. Olson*, 746 P.2d 264, 268 (Utah App.1987). However, as explained above, there is no enforceable contract between Bailey–Allen and the Kurzets. Thus, recovery under quantum meruit may be appropriate.

As discussed earlier, a non-breaching party is discharged from its contract duties but may have a quasi-contractual duty to pay the value of the benefit conferred in excess of the damage caused by the contractor's breach. Corbin §§ 700, at 309–10, 707, at 329. The Utah Supreme Court employed an analogous approach in *Lowe v. Rosenlof*, 12 Utah 2d 190, 364 P.2d 418 (1961), suggesting that recovery in quantum meruit is appropriate to compensate a breaching contractor for pre-breach work performed. The court stated that while a breaching contractor "is not entitled to the benefits of the contract, he [or she] is, nevertheless, entitled to payment on a quantum meruit basis for the work which he [or she] did perform." *Id.*, 12 Utah 2d at 194–95, 364 P.2d at 421; *see also Backus v. Apishapa Land & Cattle Co.*, 44 Colo.App. 59, 615 P.2d 42, 44 (1980); *Eckes v. Luce*, 70 Okla. 67, 173 P. 219, 220 (1918).

■ Quantum meruit has two branches, both rooted in justice. *Davies*, 746 P.2d at 269; *accord Scheller v. Dixie Six Corp.*, 753 P.2d 971, 975 (Utah App.1988). The branch applicable to this case is a contract implied in law, also known as quasi-contract or unjust enrichment, which is a legal action in restitution. *Davies*, 746 P.2d at 269. To prove a contract implied in law or unjust enrichment, the following must be shown: "(1) the defendant received a benefit; (2) an appreciation or knowledge by the defendant of the benefit; (3) under circumstances that would make it unjust for the defendant to retain the benefit without paying for it." *Id.*; *accord Backus*, 615 P.2d at 44. *The benefit*

*conferred on the defendant,* and not the plaintiff's detriment or the reasonable value of its services, is the measure of recovery. *Davies,* 746 P.2d at 269; *accord Scheller,* 753 P.2d at 975.

■ The trial court's findings of fact and conclusions of law do not specifically address the three requirements for recovery under unjust enrichment, nor do the undisputed underlying facts make clear that a quasi-contract award is appropriate. Instead the court's findings are internally inconsistent. For example, the trial court concluded that Bailey–Allen conferred a $10,000 benefit "regardless of whether plaintiff performed its duties under the contract." The Kurzets argue persuasively that Bailey–Allen does not satisfy the first element of the *Davies* test because Bailey–Allen conferred no benefit upon them. The trial court seemed to agree, at least in theory, in finding that the 10% of the work completed during Bailey–Allen's tenure was not necessarily due to its presence or performance.

It is equally unclear whether the second element of the *Davies* test was satisfied. Mr. Kurzet's testimony suggests he failed to realize any benefit conferred directly by Bailey–Allen. In fact, the core of the Kurzets' defense is that Bailey–Allen failed to perform any of the material terms of the contract and that any portion of the project completed was accomplished by other parties. Furthermore, the trial court found that Bailey–Allen did not give the project the attention Mr. Kurzet demanded. Finally, under the third element, the trial court did not find explicitly that it would be unjust to allow the Kurzets to retain, without payment, the construction completed before Bailey–Allen was terminated.

We are simply unable to determine whether the trial court's award of $10,000 "in quantum meruit/unjust enrichment" was predicated on the proper legal standard. We therefore reverse the award and remand for analysis and findings under the standard articulated in *Davies.* The trial court should make detailed, consistent findings on each of the three required elements and allow recovery only if all three are satisfied.

## C. Measure of Damages

■ If the trial court determines on remand that an award is warranted, we offer the following guidance for assessing the measure of damages. The Restatement (Second) of Contracts suggests a measure of damages referred to as "restitution in favor of party in breach." Restatement (Second) of Contracts § 374 (1981). Section 374 states that the breaching party is liable for the loss caused by the breach, but may recover the benefit conferred if it exceeds that loss. *Id.* ·The party seeking restitution must prove the measure of that benefit. *Id.*

■ Therefore, if on remand the trial court determines that recovery under quantum meruit is appropriate, it must make findings on the damages caused by Bailey–Allen's breach. The court should also make particularized findings on any benefit conferred on the Kurzets by Bailey–Allen, including its supervision as the general contractor and its involvement in negotiating the purchase price of the lumber at issue. We note that the court should make certain that any benefit conferred in negotiating the price of the lumber must be somehow in addition to the benefits Bailey–Allen conferred by virtue of performing its contractual duty to supervise the project. Bailey–Allen should ultimately recover only the benefit conferred in excess of the damage it caused. We also note that the percentage of the work completed, if it resulted from Bailey–Allen's efforts, is not an unreasonable measure of the benefit conferred. *See Darrell J. Didericksen & Sons, Inc. v. Magna Water & Sewer,* 613 P.2d 1116, 1119 (Utah 1980) (noting trial court may determine recovery "on the basis of the contract price, or on the reasonable value, of the portion of the project already completed and not paid for"); *see also* Restatement (Second) of Contracts § 374 (1981) (deeming contract price inconclusive evidence of benefit conferred and stating "in no case will the party in breach be allowed to recover more than a ratable portion of the total contract price where such a portion can be determined").

## II. PREJUDGMENT INTEREST

The Kurzets next claim that the trial court improperly awarded Bailey–Allen prejudgment interest. Because we vacate the judgment, we deal with this issue only for the benefit of the trial court if it concludes on remand that a judgment under quantum meruit is proper.

■ A trial court's decision on "entitlement to prejudgment interest presents a question of law which we review for correctness." *Andreason v. Aetna Casualty & Sur. Co.*, 848 P.2d 171, 177 (Utah App.1993). The Utah Supreme Court recently reiterated the rule that prejudgment interest is properly awarded when "the loss had been fixed as of a definite time and the amount of the loss can be calculated with mathematical accuracy in accordance with well-established rules of damages." *Bellon v. Malnar*, 808 P.2d 1089, 1097 (Utah 1991). The court also noted that prejudgment interest is typically not allowed in cases of equitable relief that " 'address themselves to the conscience and discretion of the trial court.' " *Id.* (quoting *Fullmer v. Blood*, 546 P.2d 606, 610 (Utah 1976)).

■ This court has previously rejected a claim for prejudgment interest on an unjust enrichment award. *Shoreline Dev., Inc. v. Utah County*, 835 P.2d 207, 211 (Utah App. 1992). We noted that "the lack of mathematical certainty generally prevents an award of prejudgment interest in equity claims." *Id.* We conclude that any damages in this case cannot be fixed at a particular time and with accuracy. *Smith v. Linmar Energy Corp.*, 790 P.2d 1222, 1225 (Utah App.1990). Therefore, even if recovery in quantum meruit is awarded on remand, no prejudgment interest should be awarded.

## III. POSTJUDGMENT INTEREST [2]

■ The Kurzets also appeal the award of postjudgment interest at 12% per annum from and after April 17, 1992, the date upon which the trial court granted Bailey–Allen's motion to compel findings, conclusions, and judgment.[3] They claim that postjudgment interest, if appropriate at all, should accrue only as of the date a judgment is entered. We review the award of postjudgment interest, a question of law, under the correction of error standard. *Cf. Andreason v. Aetna Casualty & Sur. Co.*, 848 P.2d 171, 177 (Utah App.1993) (applying same standard of review to prejudgment interest).

■ Our decision in *Mason v. Western Mortgage*, 754 P.2d 984 (Utah App.1988), disposes of this issue. In *Mason*, this court held that postjudgment interest dates from the entry of a new judgment upon remand. *Id.* at 987. Moreover, we cited with approval a California case holding that " '[a] judgment bears legal interest from the *date of its entry in the trial court.' "* *Id.* at 986 (quoting *Stockton Theatres, Inc. v. Palermo*, 55 Cal.2d 439, 11 Cal.Rptr. 580, 360 P.2d 76, 78 (1961)).

*Mason* dictates that any postjudgment interest awarded in this case should run only from the date of the new judgment on remand. *Id.* at 987. We therefore reverse the award of postjudgment interest from April 17, 1992 and remand for the entry of postjudgment interest, if damages are awarded, only from the date the new judgment is entered.[4]

---

**2.** If the trial court does not award damages on remand, then there will be no basis for postjudgment interest. We therefore offer the following guidance only in the event that damages are awarded.

**3.** Apparently the delay in filing the findings, conclusions, and judgment occurred because the Kurzets obtained new counsel. As soon as the substitution of counsel took place, the documents were filed. Bailey–Allen argues that it was appropriate for the trial court to "penalize" the Kurzets for this delay. The Kurzets counter that Bailey–Allen could have sought sanctions for the delay and that the trial court should not have penalized them in this fashion for delaying the entry of the judgment.

**4.** To avoid confusion on remand, we wish to make clear that any post-judgment interest should run from the date that the new judgment is entered, rather than orally rendered. *See* Utah R.App.P. 32; *Mason*, 754 P.2d at 987; *see also National Steel Const. Co. v. National Union Fire Ins. Co.*, 14 Wash.App. 573, 543 P.2d 642, 644–45 (1975) (concluding entry of judgment and not oral ruling liquidates damages because oral ruling subject to change before entry); *Pure Gas & Chem. Co. v. Cook*, 526 P.2d 986, 993 (Wyo.1974) (concluding verdict is not final liquidation of sum

## IV. ATTORNEY FEES

Finally, the Kurzets challenge the trial court's denial of their request for attorney fees and costs attributable to their successful motion for partial summary judgment. On September 24, 1991, the trial court granted the Kurzets' motion for partial summary judgment on the mechanics' lien and construction bond causes of action. At that time, the court "reserved for future determination" the request for attorney fees and costs. Although the Kurzets subsequently filed an Affidavit of Attorney Fees and Costs and requested such fees on several occasions, the trial court never determined the amount of fees and ultimately denied without explanation the request for attorney fees and costs attributable to the successful motion for partial summary judgment.

■■■ In most cases, attorney fees are appropriately awarded only if authorized by statute or contract. *Dixie State Bank v. Bracken,* 764 P.2d 985, 988 (Utah 1988). The Mechanics' Lien statute provides: "In any action brought to enforce any lien under this chapter *the successful party shall be entitled to recover a reasonable attorneys' fee,* to be fixed by the court, which shall be taxed as costs in the action." Utah Code Ann. § 38-1–18 (1988) (emphasis added). Bailey–Allen concedes that section 38–1–18 applies and apparently does not dispute that this is an action "to enforce any lien." *Id.* The issue, then, is whether attorney fees must be awarded under the statutory scheme. In *Rotta v. Hawk,* 756 P.2d 713 (Utah App. 1988), this court observed that a lien foreclosure action satisfied the requirements of section 38–1–18. *Id.* at 716. Furthermore, the supreme court has previously ruled that the benefit of attorney fees under the statute is conferred upon "the successful party," which may include the party who defended against the lien. *Palombi v. D & C Builders,* 22 Utah 2d 297, 300–01, 452 P.2d 325, 327–28 (1969). Therefore the Kurzets, as the successful party, were entitled to attorney fees.

We thus conclude that the trial court erred in denying the Kurzets' request for attorney fees under the Mechanics' Lien statute, and

we remand for a determination of the amount of reasonable attorney fees. For guidance in calculating that amount, we direct the trial court to *Dixie State Bank,* 764 P.2d at 989–90 (establishing "practical guidelines" for evaluating evidence of reasonable attorney fees).

■■ Attorney fees under the Bond Statute may also be warranted. The Bond Statute states: "In an action for failure to obtain a bond, the court *may award* reasonable attorneys' fees to the prevailing party." Utah Code Ann. § 14–2–2(3) (1992) (emphasis added). Bailey–Allen is apparently correct, then, that section 14–2–2(3) endows the trial court with discretion in awarding attorney fees. We must therefore determine whether the trial court's denial of those fees constituted an abuse of discretion. *Equitable Life & Casualty Ins. Co. v. Ross,* 849 P.2d 1187, 1194 (Utah App.), *cert. denied,* 860 P.2d 943 (Utah 1993) (awarding attorney fees under contract). However, in order for this court to conduct a meaningful review of that determination, we must rely on adequate findings of fact, *Brown v. Richards,* 840 P.2d 143, 155–56 (Utah App.1992), *cert. denied,* 853 P.2d 897 (Utah 1993), which are absent in this case.

Consequently, the trial court's failure to set forth its basis for denying the requested attorney fees was an abuse of discretion, and we remand for the entry of findings supporting the decision to award or deny attorney fees under the Bond Statute. When determining whether attorney fees should be awarded under the Bond Statute, the trial court should consider precedent treating the Bond Statute as auxiliary to the Mechanics' Lien Statute and as sharing with it a common purpose. *See King Bros., Inc. v. Utah Dry Kiln Co.,* 13 Utah 2d 339, 341, 374 P.2d 254, 255–56 (1962); *Rio Grande Lumber v. Darke,* 50 Utah 114, 124, 167 P. 241, 245 (1917). Those cases suggest that it is generally appropriate to award reasonable attorney fees under the Bond Statute when fees are awarded under the Mechanics' Lien Statute.

due until judgment entered and awarding post-

judgment interest from date of entry).

## CONCLUSION

Bailey–Allen was not entitled to recover damages under the contract. However, it may be entitled to recover in quantum meruit. Accordingly, we reverse and remand for the entry of findings consistent with this opinion and, if those findings support an award in quantum meruit, for the entry of a judgment. We reverse the award of prejudgment interest, and we direct the trial court to award postjudgment interest, if a judgment is awarded, only from the date the new judgment on remand is entered. Finally, we reverse and remand for the entry of attorney fees under the Mechanics' Lien Statute and for consideration of whether they should be awarded under the Bond Statute.

DAVIS and ORME, JJ., concur.