1999 UT App 109

Boyd J. **BROWN**, an individual; and Interwest Aviation Corporation, a Utah corporation, Plaintiffs, Appellees, Cross-appellants,

v.

**DAVID K. RICHARDS & COMPANY**; and David K. Richards, an individual, Defendants, Appellants, and Cross-appellees.

No. 971536–CA.

Court of Appeals of Utah.

April 8, 1999.

Robert S. Campbell, Jr., Sheleigh A. Chalkley, Berman, Gaufin, Tomsic, Savage & Campbell, Salt Lake City, Elizabeth T. Dunning, and Carolyn Cox, Watkiss, Dunning & Skordas, Salt Lake City, for Appellants.

Bruce E. Coke, John W. Call, and Curtis C. Nesset, Nygaard, Coke & Vincent, Salt Lake City, for Appellees.

Before Judges BILLINGS, DAVIS, and ORME.

## OPINION

BILLINGS, Judge:

¶ 1 Appellants and cross-appellees David K. Richards and David K. Richards & Company (collectively "Richards") appeal an award of attorney fees following our remand of the subject case, *Brown v. Richards*, 840 P.2d 143 (Utah Ct.App.1992) (*Brown I*). Richards alleges the court erred in calculating his attorney fees for trial work, in awarding only sixty percent of his fees and costs incurred on the prior appeal, in awarding him only sixty percent of his post-appeal fees, in calculating his costs incurred, and in awarding appellees and cross-appellants Boyd J. Brown and Interwest Aviation Management (collectively "Brown") additional attorney fees.

¶ 2 Brown cross appeals, countering that Richards is not entitled to any attorney fees. Alternatively, Brown argues that if any award is proper, the trial court erred in awarding Richards post-appeal fees, in awarding Richards prejudgment interest on his breach of warranty claim, in awarding Richards postjudgment interest on his attorney fees, in adopting the incorrect statutory rate in calculating postjudgment interest, and by not entering a net judgment.

¶ 3 Finally, Richards and Brown both seek attorney fees on this appeal. We affirm in part, and reverse and remand in part.

## FACTS

¶ 4 *Brown I* arose "out of a complex transaction where Brown, the principal shareholder of Interwest Aviation Corporation (Interwest), sold his Interwest stock and several other assets to Richards through numerous agreements and options." *Brown I,*

840 P.2d at 146. In *Brown I,* among other rulings not at issue in this appeal, we vacated the trial court's award of attorney fees and remanded this issue to the trial court. Specifically, we noted:

> In this case, the award of attorney fees is a complex matter due to the adjudication of multiple claims arising under several contracts with each party winning some and losing some. Given the complexities, the trial court's summary findings are simply too sparse for us to determine whether the trial court made a permissible award.

*Id.* at 156.

¶ 5 As to attorney fees on appeal, we noted "[a]ttorney fees and costs arising from this appeal are therefore awarded in general to Richards and in limited part to Brown." *Id.* at 156–57. Both parties were to make evidentiary showings of reasonable attorney fees on remand. *See id.* at 157.

¶ 6 On remand, Richards filed his application for attorney fees and costs. In making his fee request, Richards divided his attorney fees incurred into fourteen categories: (1) factual development and discovery scheduling; (2) preparation of answer and counterclaims; (3) plaintiffs' discovery; (4) defendants' discovery; (5) plaintiffs' pretrial motions; (6) damages; (7) defendants' pretrial motions; (8) jury instructions and special interrogatories; (9) general trial preparation and trial; (10) preparation of judgment and related issues; (11) post-judgment motions; (12) petition for writ of mandamus; (13) negotiation concerning possible sale of Interwest and other non-litigation services; and (14) attorney[ ] fees. Attached to the Fee Application, Richards provided copies of all bills for legal work done in the trial court.

¶ 7 Judge Rigtrup held a hearing on Richards's Motion on April 12, 1994. Judge Rigtrup permitted Brown to call one of Richards's attorneys, Elizabeth Dunning, to examine her concerning Richards's methodology and calculations of attorney fees as set out in the fee application. At the end of the hearing, Judge Rigtrup granted Brown leave to continue his examination by deposing Dunning.

¶ 8 Brown requested another evidentiary hearing on Richards's request for attorney fees, which took place on January 31, and February 1, 2, and 3, 1995. At the hearing, Richards's counsel testified about their education and experience, the staffing of the case, and the methodology they used to apportion their fees. This testimony included an explanation of Richards's fourteen fee categories, and how the allocation between recoverable and non-recoverable fees was made. Further, Richards's counsel testified as to the manner in which trial time and witness preparation time during trial was analyzed, and how fees were eliminated or reduced for witnesses whose testimony went wholly or in part to claims for which fees were not recoverable. Richards provided evidence that he expended $540,000 in recoverable trial fees, $136,000 for fees on the appeal of *Brown I,* and $78,000 in postappeal work.

¶ 9 As further support for these figures, Richards presented the testimony of Harold G. Christensen of Salt Lake City, an attorney with trial experience in complex commercial litigation. Christensen testified that Richards's rates were reasonable, the total amount of time spent, both at trial and on appeal, was reasonable, and the method used to apportion time between compensable and noncompensable tasks was reasonable and typically employed in the Salt Lake City legal community.

¶ 10 Brown countered with the testimony of George Naegle, a Salt Lake City attorney who represented insurance companies. Mr. Naegle testified that by the late 1980s, insurance companies did not permit their retained attorneys to engage in "block billing."[1] Brown hoped to show that Richards's attorneys had improperly "block-billed." Finally, Bruce Coke, an attorney for Brown, testified regarding Brown's original fee application.

¶ 11 In a Minute Entry dated December 31, 1996, Judge Rigtrup provided his ruling on attorney fees and other related issues. First, Judge Rigtrup awarded Richards $218,986.42 in trial attorney fees. While this

1. Block billing involves recording only a daily overall time-total for all tasks performed, rather than separately recording time spent on each task performed on a particular day.

award was only about one-half of the fees requested, Judge Rigtrup, at an earlier oral announcement of his decision, stated that the rates charged and time spent through trial by Richards's attorneys were reasonable.

¶ 12 Second, he restored his original award of postjudgment interest on Richards's attorney fees. Third, he awarded Richards sixty percent of his *Brown I* appeal attorney fees, noting that Brown had prevailed on "several issues." Finally, he awarded Richards sixty percent of his postappeal fees, noting that since Richards's trial time was not accounted for by specific tasks, allocation between compensable and noncompensable claims was more difficult.

¶ 13 On March 21, 1997, Judge Stephen Henriod, who took the case upon Judge Rigtrup's retirement, entered findings and conclusions which mirrored the December 31 minute entry and entered a final judgment disposing of all remaining issues. Both parties now appeal.

## ANALYSIS

### I. *Attorney Fees at Trial*

#### A. Remand Instructions

¶ 14 Brown argues that Richards is not entitled to *any* attorney fees because the evidence Richards presented to support his fee application on remand did not meet the requirements we imposed in *Brown I*. In *Brown I* we noted:

> On remand, Richards must set out the time and fees expended for (1) successful claims for which there may be an entitlement to attorney fees, (2) unsuccessful claims for which there would have been an entitlement to attorney fees had the claims been successful, and (3) claims for which there is no entitlement to attorney fees.

*Brown I*, 840 P.2d at 156 n. 12.

¶ 15 In Utah, an attorney fee application must reasonably allocate time incurred between compensable and non-compensable claims. *See Cottonwood Mall Co. v. Sine*, 830 P.2d 266, 269–70 (Utah 1992). The evidence that Richards presented was sufficient to meet the allocation instructions we set on remand of *Brown I*. Richards, through

his fee application, properly set out the time and fees expended for successful claims for which there was an entitlement to attorney fees. Richards went through all billing records and eliminated fees for all non-recoverable fees and articulated this process for the trial court in the evidentiary hearing. The substance of the process reached our desired result of separating recoverable from nonrecoverable fees for consideration by the trial court, even though Richards forewent the exercise, perhaps meaningless in retrospect, of allocating unrecoverable fees between category (2) and category (3) fees referred to in *Brown I*.

#### B. Calculation of Trial Fees

¶ 16 Judge Rigtrup reduced Richards's overall fee award for trial work from the requested amount of $540,000 to $218,986.42. Richards claims this was error.

¶ 17 Generally, this court has been critical of judges who simply reduce a fee award "ad hoc." *See, e.g., Govert Copier Painting v. Van Leeuwen*, 801 P.2d 163, 174 (Utah Ct.App.1990). There, we stated that

> [w]e have consistently encouraged trial courts to make findings to explain the factors which they considered relevant in arriving at an attorney fee award. We have held that unless the court offers an explanation for the reduction of the attorney fees requested in a case where there is adequate and uncontroverted evidence in the record to support the fees, it abuses its discretion.

*Id.* (quotations and citations omitted).

¶ 18 In this case, the trial court made no findings whatsoever as to why it reduced the attorney fees requested. In fact, the judge found the rates charged and the time expended reasonable. The trial court stated only that "thirty-five percent of the total time expended through trial [i.e., the approximate time spent on the breach of warranty claim]" would be more reasonable. Richards argues the court erred in awarding fees only for the breach of warranty claim but not the fees incurred on Richards's defense to Brown's contract claim, where Richards established that Brown had failed to

substantially perform under the contract. We agree. Further, the court erroneously eliminated fees where the factual development, although necessary to defeat Brown's contract claim, also bore on Richards's fraud claims.

¶ 19   We have awarded fees to a prevailing party even though some of the fees may not have been incurred on strictly compensable issues, because proof of the compensable and non-compensable claims overlapped. For example, in *First General Services v. Perkins*, 918 P.2d 480 (Utah Ct.App.1996), a subcontractor sought to foreclose a mechanics' lien against a homeowner, and the homeowner counterclaimed alleging negligent workmanship. *See id.* at 483. The subcontractor prevailed and sought recovery of its fees incurred in both the foreclosure of its lien and defense to the homeowner's counterclaim. *See id.* The trial court awarded fees on the foreclosure claim, but refused to award fees under the mechanics' lien statute for defense against the homeowner's counterclaim. *See id.*

¶ 20   On appeal, we reversed, holding that the subcontractor was entitled to fees both in pursuing its affirmative claims and defending against the counterclaim because the two were inextricably tied together. *See id.* at 486. In so holding, we recognized that where the proof of a compensable claim and otherwise non-compensable claim are closely related and require proof of the same facts, a successful party is entitled to recover its fees incurred in proving all of the related facts. *See id.*

¶ 21   Additionally, in *Sunset Fuel & Engineering Co. v. Compton*, 97 Or.App. 244, 775 P.2d 901 (1989), the lessor brought an action against the lessees to recover damages for unpaid rent. *See id.* at 902. The lessees counterclaimed for fraud. *See id.* at 904. Ultimately, the lessor prevailed on both its claim and the lessees' counterclaim, and was awarded its attorney fees, including fees for defeating the counterclaim, based on an attorney fees provision in the lease. *See id.* The lessees appealed the award of fees, asserting the lessor was not entitled to fees for defeating the counterclaim but only for prosecuting the claim for unpaid rent. *See id.*

The Oregon Court of Appeals affirmed the award, holding that "[a]ttorney fees need not be apportioned when they are incurred for representation on an issue common to a claim in which fees are proper and one in which they are not." *Id.*

¶ 22   Richards's defense under the Asset Sale Agreement (i.e., Richards's defense that Brown failed to substantially perform) had a common factual basis with his breach of warranty and his negligent and fraudulent misrepresentation claims. Richards's defense to Brown's contract claim was that Brown had misrepresented the value of the company and had breached warranties under the contract and thus had failed to substantially perform. Where Richards's attorneys' efforts went to prove facts common to both recoverable contract and non-recoverable fraud claims, the fees were recoverable.

¶ 23   The trial court commented:

[Richards's] counsel did not allocate time based on individual claims because of the impracticality of doing so. It would be difficult if not impossible in many instances to know how efforts made might relate to one claim or another. *There was an overlapping of the warranty evidence and fraud evidence such that one could not allocate the time expended to one claim or the other with any degree of precision.*

¶ 24   Thus, we conclude the trial court erred in reducing the reasonable fees requested and established by Richards for trial work. We therefore reverse and remand for the entry of an award to Richards for his trial fees of $540,000.

## II.   *Attorney Fees in the Prior Appeal*

¶ 25   The trial court awarded Richards sixty percent of his prior appeal fees. The trial court did not challenge Richards's expenditure of time and fees pursuing the prior appeal as inappropriate in any way. Rather, the trial court concluded that Richards's allocation of fees made "no allowance for the fact that [Brown] prevailed on many issues." Richards contends this was error.

¶ 26   In *Brown I*, we stated:

A review of the issues on appeal reveals that they relate to the Interwest purchase

agreement and that Richards was successful on each major issue discussed with the exception of his argument that he was entitled both to the $500,000 fraud award and to forgiveness of his contractual debt. While Brown was successful in limiting the amount claimed by Richards on the fraud claim, Richards nevertheless prevailed on the issue of culpability and is therefore the prevailing party on appeal.

*Brown I*, 840 P.2d at 156.

¶ 27 The trial court's conclusions are in conflict with our holding in *Brown I*. Brown prevailed on one narrow issue. Richards should have been awarded all of his fees pursuant to the prior appeal, minus any fees related to Richards's recission claim. Richards properly eliminated these fees (which amounted to an approximate three percent overall reduction) based on the time spent on that issue. We therefore reverse the award of attorney fees on the prior appeal and remand for entry of an award of $136,000 in fees established by Richards.

### III. *Post–Appeal Attorney Fees*

¶ 28 Brown argues the trial court erred in making any award of post-appeal fees (i.e., fees incurred in calculating fees) to Richards. In opposition, Richards argues the trial court erred in awarding him sixty percent of his post-appeal fees.

■ ¶ 29 This court has held that the prevailing party in a dispute over a contractual attorney fees provision was entitled not only to attorney fees on appeal but also to the fees it reasonably incurred establishing the reasonableness of the fees for which it was entitled. *See James Constructors, Inc. v. Salt Lake City*, 888 P.2d 665, 674 (Utah Ct.App.1994). We noted that this result was required under ordinary contract law principles, as well as from specific indemnity law doctrines. *See id.* at 674–75. Thus, reasonable fees to establish Richards's attorney fees (per our remand instructions) are recoverable.

¶ 30 Whether the trial court's reduction of the fees requested was proper is another question. We find *Goos v. National Association of Realtors*, 997 F.2d 1565 (D.C.Cir.

1993), instructive. In that case, the court reasoned:

> [Appellant] contests the district court's additional deduction of 50 percent from her request for fees incurred in preparation of the fee petition. She argues that the magnitude of the fees-for-fees request grew out of the circumstances of the case, such as the NAR's refusal to negotiate and the need for a reply, and that the court abused its discretion in cutting this fee request by an additional 50 percent.
>
> We have made it clear that "there is a point at which thorough and diligent litigation efforts become overkill." At such point, "the district court must disallow claims for excessive, redundant, or otherwise unnecessary charges." As long as it presents some evidence of overkill in support of trimming the fees-for-fees request, we will not disturb the [trial] court's discretionary adjustments.

*Id.* at 1572–73 (citations omitted).

■ ¶ 31 On December 31, 1996, Judge Rigtrup, in his Minute Entry, awarded Richards sixty percent of his post-appeal fees. The trial court noted:

> Because time was not entered and accounted for by specific tasks, the internal accounting system could not mechanically allocate time. As a result, many needless hours were expended manually allocating time, which could have been much more efficiently handled as an accounting function. Moreover, many hours and much expense has been incurred in the fee debate.
>
> The combined fee-cost request of $78,169.32 for post-appeal time and expense is found by the Court to be excessive and unreasonable. Allowing 60% thereof is found by the Court to achieve a more reasonable allowance. Accordingly ... the Court finds it reasonable to award defendants' counsel an additional $46,901.59 in fees for post-appeal time and expenses....

¶ 32 Because, in this instance, the trial court made specific findings supporting its trimming of the fees-for-fees request, we will not disturb the trial court's adjustments.

Accordingly, we affirm the award of $46,-901.59 in post-appeal fees.

## IV. *Costs*

¶ 33   In its conclusions of law, the trial court held that, under the terms of the contract, Richards could recover only those costs allowed under Rule 54(d)(1) of the Utah Rules of Civil Procedure, which provides: "Except when express provision therefor is made either in a statute of this state or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs...." Utah R. Civ. P. 54(d)(1).

¶ 34   Richards does not disagree with the trial court's legal conclusion, but contends that because the trial court's 1990 judgment adopted a broader definition of costs, the trial court was precluded from revisiting the issue. We disagree.

¶ 35   We instructed the trial court to enter specific findings and conclusions addressing each of the separate components of Richards's requests for fees and costs. The trial court properly revisited the issue of costs and specifically determined that the term "costs" should be given its traditional meaning under Rule 54(d)(1).

## V. *Brown's Attorney Fees on Remand*

¶ 36   On remand from *Brown I*, the trial court awarded $7,879.50 in additional fees to Brown. The court concluded that Brown "is entitled to fees incurred in successfully resisting defendants' recission claim." Richards asserts we should vacate these fees as the trial court does not state that the fees be "unrelated to the sale of the Interwest assets," as we required in *Brown I*. Richards argues these fees reflect amounts already awarded to Brown by the trial court in its 1990 award. We conclude the absence of language in this instance is not fatal as our direction was specific, and we assume the trial court followed that direction. Thus, we affirm the attorney fees awarded to Brown.

## VI. *Interest Issues*

### A.   Date Interest Began Accruing

¶ 37   Brown maintains that because we reversed and remanded in *Brown I*, judg-ment interest dates only from the entry of a new judgment. In opposition, Richards asserts *Brown I* did not vacate the earlier verdict, but merely modified it. He contends that in *Brown I*, we *affirmed the basis* of his award; the amount was subject to redetermination, upward or downward, but the initial judgment in his favor remained in place. Judge Henriod, in his March 21st Final Order, concluded that "[a]lthough the Utah Court of Appeals' opinion in this case indicated Richards's fee award was 'vacated,' it is clear that the case was remanded 'for a redetermination of the amount of fees.'"

¶ 38   The parties agree that resolution of this issue turns on our interpretation of *Bailey–Allen Co. v. Kurzet*, 876 P.2d 421 (Utah Ct.App.1994) and *Mason v. Western Mortgage Loan Corp.*, 754 P.2d 984 (Utah Ct.App.1988). In *Mason*, we held that when a judgment is *modified*, either upward or downward on appeal, not vacated, it nonetheless bears interest from the date of entry of the *original* judgment. *See Mason*, 754 P.2d at 986. We concluded that where a judgment is *reversed* on appeal and entry of judgment is ordered for a different party, postjudgment interest runs only from the date of entry of the *new judgment*. *See id.* In *Bailey–Allen*, we overturned the basis of Bailey–Allen's judgment because the trial court did not apply the correct law, and remanded for a determination of liability. *See* 876 P.2d at 427. We noted that if Bailey–Allen obtained a judgment on a correct interpretation of the law, interest could only run from the date of that new judgment. *See id.*

¶ 39   We agree with the trial court that Richards was entitled to post-judgment interest on his fee and cost award from October 18, 1990, the date the original judgment was entered in his favor. Although we purportedly vacated the original award, we did not rule that Richards was not entitled to attorney fees. The essence of our ruling was one of remand for modification of the award. In determining the nature of a legal order or proceeding, we look to the substance of the order or proceeding, and not

its title. *See, e.g., Renn v. Utah State Bd. of Pardons,* 904 P.2d 677, 681 (Utah 1995) ("We will look to the substance of the action and the nature of the relief sought in determining the true nature of the extraordinary relief requested."); *Gillmor v. Wright,* 850 P.2d 431, 433 (Utah 1993) ("On appeal, we disregard the labels attached to findings and conclusions and look to the substance."). We conclude the substance of our action on attorney fees was a remand for modification of the award to Richards. Thus, we affirm the trial court's award of postjudgment interest on the attorney fee award from October 18, 1990.

B. Rate of Postjudgment Interest Accrual

¶ 40 During the proceedings on remand, the statutory interest rate changed. The prior statute provided: "[Non-contract judgments] shall bear interest at the rate of 12% per annum." Utah Code Ann. § 15–1–4 (1992). The May 3, 1993, modification of that statute provided: "[Non-contract] judgments shall bear interest at the federal postjudgment interest rate of January 1 of each year, plus 2%." *Id.* § 15–1–4(2) (1996).

¶ 41 Brown alleges that absent an agreement to the contrary, the rate of interest on the non-contract awards (i.e., Richards's breach of fiduciary duty and punitive damage awards) was automatically decreased from twelve percent to the percentage pegged at the federal rate as of the effective date of the amended statute. Richards counters that this would amount to a retroactive application of the statute.

¶ 42 This appears to be a question of first impression in Utah. Other courts have ruled both ways on this subject. *See generally,* Diane M. Allen, Annotation, *Retrospective Application and Effect of State Statute or Rule Allowing Interest or Changing Rate of Interest on Judgments or Verdicts,* 41 A.L.R.4th 694 (1985), and cases cited therein. As one court reasoned:

> The split of authority appears to be based upon whether the treatment of the amount of interest on the judgment is viewed as a contractual or statutory obligation. If the judgment or at least the interest thereon is considered a contractual obligation, then

> the rate of interest does not change as a result of the statutory change of the rate of interest. This rule applies even if the cause of action sounds in tort rather than contract. If, on the other hand, the judgment or at least the interest thereon is considered a statutory obligation, a change in the statutory rate of interest will result in a change in the rate of interest upon the judgment.

*McBride v. Superior Court,* 130 Ariz. 193, 635 P.2d 178, 178–79 (1981) (citations omitted).

¶ 43 We agree with *McBride*'s treatment of this issue. In that case, the court considered the effect of a statutory change in the legal postjudgment interest rate between the entry of judgment and the satisfaction of judgment. *See id.* at 178–79. The court held that "interest [on] a judgment is a statutory and not a contractual obligation, and when the interest rate [is] changed by statute, the rate of interest on [a] judgment [is] also changed." *Id.* at 179; *see also Noe v. City of Chicago,* 56 Ill.2d 346, 307 N.E.2d 376, 379 (1974) (holding that "interest on a judgment arises from a statute's operation and not from any contract or other agreement of the parties"); *Swanson v. Flynn,* 75 N.D. 597, 31 N.W.2d 320, 323 (1948) (same).

¶ 44 Accordingly, all non-contract awards in the 1990 judgment are entitled to twelve percent interest from the date of the judgment until May 3, 1993, and after that date the rate should be recalculated at the federally pegged interest rate.

C. Prejudgment Interest on Breach of Warranty

¶ 45 On remand from *Brown I,* the trial court awarded Richards breach of warranty damages of $100,000 and determined Richards was entitled to prejudgment interest on that award at a rate of ten percent from April 24, 1984 through February 1, 1997.

¶ 46 Brown contends that Richards is not entitled to prejudgment interest because Richards was not awarded any prejudgment interest in the original 1990 judgment. That judgment awarded damages for

breach of warranty "for the amount of $100,-000 plus interest from the initial date of the verdict on April 22, 1989. . . ." No prejudgment interest was awarded and Richards did not appeal the issue. We conclude the issue was waived. Richards merely appealed the breach of warranty award generally on the appeal of *Brown I*. Richards has not preserved the interest issue for this appeal as he waived it in his original appeal of *Brown I*.

## VII. *Offset of Fee Awards*

¶ 47 The final judgment in this case contains a variety of judgments for each party. These judgments contain a variety of interest rates and starting dates. Brown argues the trial court erred by not consolidating all those judgments into one net judgment. Richards argues that Brown never requested a net judgment and has therefore waived the issue. Upon review of the record, we conclude that the issue was properly raised.

¶ 48 In *Bailey–Allen*, we indicated that when claims and counterclaims in an action are related to the same or related subject matter, a trial court should enter only one net judgment. *See Bailey–Allen*, 945 P.2d at 192–93. There, defendants complained a judgment in their favor was applied as an offset against a larger judgment in favor of plaintiff. *See id.* at 192. We stated that "the distinctions between counterclaims and setoffs have been dissolved." *Id.* at 192 (citation omitted).

> Hence, we agree . . . that "in a situation such as this where adverse claims are made relating to the same or related subject matter, the trial court may make findings in favor of either party but should render only one judgment and that in favor of the party having the greater amount due."

*Id.* at 192–93 (quoting *Betz v. Timmons*, 119 Ohio App. 239, 199 N.E.2d 22, 23 (1963)).

¶ 49 On remand, the trial court should separately calculate awards to each party, interest on the awards, and attorney fees and costs due each party. Thereafter, the court should enter one net judgment in favor of the party receiving the largest total award, i.e., Richards.

## VIII. *Attorney Fees Pursuant to This Appeal*

¶ 50 Both parties seek attorney fees on appeal as the prevailing party on these contractual claims. Richards has prevailed on the majority of issues, but Brown has also prevailed on several. Each party should be awarded his reasonable attorney fees on the issues it won on appeal. We remand for a determination and an award of these reasonable fees, reminding the parties of the necessity of allocating fees between successful and unsuccessful claims.

## CONCLUSION

¶ 51 First, we conclude that Richards's fee allocation met our general directions on remand and is consistent with Utah law. Second, we hold that because Richards's trial efforts went to both the contract defense and the fraud claim, the claimed fees were fully recoverable and should be awarded in full on remand. Third, pursuant to our instructions in *Brown I*, we conclude that Richards is entitled to his complete fee request for the prior appeal. Fourth, we hold that postappeal fees (i.e., "fees for fees") are recoverable in Utah, and that the trial court's reduction of Richards's post-appeal fees in this case was reasonable. Fifth, we conclude that, upon the initial remand of *Brown I*, the trial court was correct to re-evaluate what costs would be awarded under the contract. Sixth, we affirm the trial court's award of Brown's attorney fees on remand, as it was made pursuant to our remand instructions in *Brown I*. Seventh, we affirm the trial court's award of postjudgment interest from October 18, 1990, the date of the original fee award, as our ruling in *Brown I* merely remanded for a modification of the trial court's earlier judgment. However, we conclude that all non-contract awards stemming from the 1990 judgment should accrue interest at the statutory rate. Additionally, we conclude that Richards is not entitled to prejudgment interest on his breach of warranty claim, as that issue was waived. Eighth, we conclude that the awards in this case should be offset and one net judgment entered in favor of the

party receiving the largest total award. Finally, we remand for the award of reasonable attorney fees to the prevailing party on each issue on appeal.

¶ 52 Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

¶ 53 I CONCUR: JAMES Z. DAVIS, Judge.

¶ 54 I CONCUR, EXCEPT THAT AS TO SECTION 6(B), I CONCUR ONLY IN THE RESULT: GREGORY K. ORME, Judge.